# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 27, 2006          Decided March 2, 2007

No. 05-7137

HAZEL V. MAYERS,
APPELLANT

v.

LABORERS' HEALTH & SAFETY FUND OF NORTH AMERICA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 01cv02671)

*John E. Carpenter* argued the cause and filed the briefs for appellant.

*James S. Ray* argued the cause and filed the brief for appellee.

Before: GINSBURG, *Chief Judge*, and SENTELLE and TATEL, *Circuit Judges*.

Opinion for the Court filed PER CURIAM.

PER CURIAM: Hazel V. Mayers appeals the district court's grant of summary judgment in favor of her former employer, the

Laborers' Health and Safety Fund of North America (LHSFNA), on her allegations of discrimination, retaliation, and constructive discharge in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*. Although we disagree with several aspects of the district court's analysis, we agree that summary judgment was appropriate.

## I.

Mayers worked for LHSFNA from November 1992 until January 2001, initially as a data entry clerk, and then, beginning in February 1996, assembling desktop publishing materials. Shortly after being transferred to the desktop publishing position, Mayers developed rheumatoid arthritis, making her new responsibilities—cutting, stapling, and the like—painful and difficult to complete. According to Mayers, she notified LHSFNA of her disease soon after being diagnosed. A year later, Mayers says, in July 1997, she requested an electric stapler and cutter, but LHSFNA failed to provide the tools. The following year, in April 1998, Mayers's co-worker in the desktop publishing operation was promoted, leaving Mayers with twice the work, but still no electric tools. Although LHSFNA promised to provide an electric cutter, it again failed to do so.

In April 1999, Mayers's physician sent a letter to LHSFNA stating that because of her condition, "she often has flares with severe swelling and pain of multiple joints. At these times the patient should be placed on light duty." Another year went by, and in March 2000, the physician sent a second letter, this time stating that Mayers's condition "obviously causes swelling and inflammation of her joints," as a result of which, "she is unable to perform the current task she has been asked to do." The next month, Mayers told LHSFNA's Assistant Executive Director that the publishing work hurt her hands. Thereafter, LHSFNA

provided Mayers with an electric cutter, and two months later, an electric stapler. Roughly three years had passed between her initial request and receipt of the tools. According to Mayers, moreover, after LHSFNA provided the electric tools, it increased her workload and, contrary to her physician's recommendation, failed to place her on "light duty." Appellant's Br. 5.

On December 22, 2000, Mayers began a one-week vacation. Then in the middle of a 4,000-brochure project with a December 29 deadline and believing that someone else would finish the project in her absence, she returned on January 2, 2001, to find the project uncompleted. She finished the project the next day and in doing so, she says, severely exacerbated her arthritis. On January 19, she resigned effective January 26. Even before the January incident, though, Mayers had applied for a position with another employer, where she began work on January 29.

On March 12, 2001, Mayers filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that LHSFNA failed to reasonably accommodate her arthritis, retaliated against her for requesting a reasonable accommodation, and constructively discharged her. *See* 42 U.S.C. § 12112 (prohibiting discrimination in employment on the basis of disability); 42 U.S.C. § 12203(a) (prohibiting retaliation for asserting an ADA claim). The EEOC issued a "Dismissal and Notice of Rights" letter in September, *see* 29 C.F.R. § 1601.19(a) (setting forth EEOC procedure for issuing letters of determination), and Mayers filed suit in the district court soon thereafter, *see* 42 U.S.C. § 2000e-5(f)(1) (authorizing suit by person claiming to be aggrieved within 90 days of dismissal of an EEOC complaint). The district court granted summary judgment for LHSFNA on all of Mayers's claims. The court rejected Mayers's failure-to-accommodate claim because LHSFNA had provided the electric tools, "albeit

slowly," and because Mayers had never—as far as the record indicated—informed LHSFNA that she was experiencing the "flare ups" referenced in the physician's letter. *Mayers v. Laborers' Health & Safety Fund of North America*, 404 F. Supp. 2d 59, 61 (D.D.C. 2005). The constructive discharge claim failed because Mayers had "*voluntarily* left her employment with LHSFNA." *Id.* The court rejected Mayers's retaliation claim, finding that she had suffered no "adverse employment action" given her testimony that the only retaliatory action she suffered was that her co-workers acted "like she was not there"—actions the district court found insufficient to establish a case of unlawful retaliation. *Id.* at 61-62. Mayers appeals.

## II.

In considering a district court's grant of summary judgment, our review is de novo, *Smith v. District of Columbia*, 430 F.3d 450, 454 (D.C. Cir. 2005), and we may affirm "on a ground not relied upon by the lower court, provided that the opposing party has had a fair opportunity to dispute the facts material to that ground," *Washburn v. Lavoie*, 437 F.3d 84, 89 (D.C. Cir. 2006). In support of its motion for summary judgment, LHSFNA argued that because Mayers's EEOC complaint was untimely, she had failed to exhaust her administrative remedies. Although the district court never addressed this argument, we shall, because it disposes of all issues, save one.

The ADA incorporates the procedural provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, including the requirement that an injured individual file an EEOC charge "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also* 42 U.S.C. § 12117 (incorporating procedural elements of Title VII). Although EEOC regulations extend the deadline for filing to 300 days

when it has a worksharing agreement with a state or local agency, *see* 29 C.F.R. § 1601.13(a)(4)(ii), Mayers does not allege the existence of such an agreement nor does she dispute the applicability of the 180-day deadline to her case. Because Mayers failed to file her EEOC complaint until March 12, 2001, the complaint was timely only as to events transpiring on or after September 13, 2000. Accordingly, except for the January brochure project, all of Mayers's claims, including LHSFNA's failure to provide electric tools, are barred.

Mayers asserts that she should nonetheless be deemed to have exhausted her administrative remedies with respect to her pre-September allegations pursuant to the continuing violations doctrine. Under that doctrine, "if the alleged acts constitute one similar pattern or practice and at least one illegal act took place within the filing period, then the complaint of discrimination is not time-barred and acts outside the statutory period may be considered for purposes of liability." *Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003) (internal quotation marks and citation omitted). According to Mayers, LHSFNA's "misconduct was pervasive and constituted an ongoing violation dating from April of 1996." Appellant's Reply Br. 9. The continuing violations doctrine, however, has two crucial limiting principles, neither mentioned by Mayers and both derived from the Supreme Court's ruling in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). First, the doctrine has no applicability to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" because "[e]ach incident of discrimination and each retaliatory adverse employment action constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114. Second, although plaintiffs may invoke the continuing violations doctrine for claims that by their nature occur not "on any particular day" but "over a series of days or perhaps years," they must allege that at least one "act contributing to the claim

occur[red] within the filing period." *Id.* at 115, 117 (describing continuing violations doctrine requirements in context of hostile work environment claim). With these two *Morgan* limitations in mind, we turn to Mayers's three substantive claims.

First, the district court found that Mayers had not been discriminated against because LHSFNA provided her electric tools, "albeit slowly," and because she never requested light duty. 404 F. Supp. 2d at 61. As to the first point, we doubt that a three-year delay in accommodating a plaintiff's disability is not actionable under the ADA. ADA accommodations must be "reasonable," 42 U.S.C. § 12112(b)(5)(A), and we are unsure how a long-delayed accommodation could be considered reasonable. We need not resolve this issue, however, for we can affirm summary judgment for LHSFNA on Mayers's failure-to-accommodate claim based on the first *Morgan* limitation. LHSFNA's failure to provide the electric tools was a discrete act of discrimination that ended, at the latest, in June 2000 when LHSFNA provided the requested equipment—well outside the 180-day period leading up to her EEOC complaint. Thus, although we think it likely that Mayers has presented sufficient evidence of pre-September 2000 discrimination to survive summary judgment, her failure to exhaust her administrative remedies precludes a finding of liability. The same holds true for Mayers's claim that she was discriminated against by not being placed on light duty, as the record contains no evidence that she requested such duty in the period after September 13, 2000.

Mayers's retaliation claim suffers from a similar defect. To make out a prima facie case of retaliation, an ADA plaintiff must show "first, that she 'engaged in protected activity'; second, that she 'was subjected to adverse action by the employer'; and third, that 'there existed a causal link between the adverse action and the protected activity.'" *Smith*, 430 F.3d

at 455 (citation omitted). Mayers points to a smorgasbord of allegedly retaliatory acts, some of which are merely her discrimination claims with new labeling—for instance, she alleges that LHSFNA's retaliation included "[the] failure to put her on light duty as ordered by her physician," Appellant's Br. 19—and others that find no support in the record, e.g., her assertion that LHSFNA "fail[ed] to consider her requests for transfer to a position in which she could work with less physical pain," *id.* Her only potentially viable claim is that LHSFNA increased her workload and tightened her deadlines in retaliation for her seeking reasonable accommodation for her arthritis. In support of this claim, Mayers testified at her deposition that LHSFNA upped her workload after providing her with electric tools in the spring or early summer of 2000. Ordinarily, such testimony might suffice to defeat summary judgment on a retaliation claim, but here it shows only that Mayers may have been retaliated against outside the actionable 180-day period.

Mayers, of course, has exhausted her administrative remedies with respect to her claim that the LHSFNA retaliated against her in connection with the January 2001 brochure project. That claim, however, fails on the merits. To begin with, Mayers does not allege that the project increased her workload above and beyond what ordinarily was expected of her. In fact, although Mayers says that she anticipated the project would be finished by someone else while she was on vacation, she nowhere claims that LHSFNA ordered her to complete it on her own when she returned. Mayers has thus failed to allege an adverse action. Even if the project did qualify as an adverse action, summary judgment was nonetheless appropriate because Mayers failed to establish a causal connection between the project and her requests for reasonable accommodation. Although causation can sometimes be inferred by temporal proximity, *see, e.g.*, *Singletary*, 351 F.3d at 525 ("[T]his circuit has held that a close temporal relationship may

alone establish the required causal connection."), the eight- or nine-month gap between the final protected activity—either the physician's March 2000 letter or Mayers's April 2000 conversation with the Assistant Executive Director—and the early January 2001 project is far too long, *see Clark County Sch. Dist. v. Breeden*, 532 U.S. 270, 273-74 (2001) (per curiam) (citing with approval circuit cases rejecting temporal proximity of three and four months as evidence of causation).

We arrive finally at Mayers's constructive discharge claim. The district court acknowledged Mayers's allegation that "she was forced to find a new job because of the hostile work environment," but concluded that "Ms. Mayers *voluntarily* left her employment with LHSFNA." 404 F. Supp. 2d at 61. In reaching this conclusion, the district court relied on the letter Mayers sent applying for her new job, which stated that "her reason for leaving LHSFNA was 'advancement.'" *Id.* The district court also ruled that "notwithstanding [Mayers's] contention in her resignation letter that LHSFNA required her to perform tasks despite advice from her doctor that she be placed on light duty, the evidence shows that no such accommodation was specifically requested by Ms. Mayers." *Id.* But the resignation letter plainly qualifies as evidence, and the district court's weighing of it against the application letter had no place in summary judgment proceedings. *See Arrington v. United States*, 473 F.3d 329, 335-38 (D.C. Cir. 2006).

Nonetheless, the district court correctly concluded that Mayers's constructive discharge claim cannot survive summary judgment. We have not yet had occasion to say whether, after *Morgan*, constructive discharge claims (like hostile work environment claims) by their "very nature involve[] repeated conduct," and are thus amenable to continuing violations analysis. *Morgan*, 536 U.S. at 115. Assuming that they do, *Morgan*'s second limiting principle bars Mayers's claim.

*Morgan* requires that Mayers show one offending act within the statutory period and, as this court recently noted, constructive discharge claims "must be predicated on a showing of either intentional discrimination, or retaliation."  *Carter v. George Washington Univ.*, 387 F.3d 872, 883 (D.C. Cir. 2004) (internal citation omitted).  Because Mayers has failed to identify a single act of discrimination or retaliation within the 180-day period, her constructive discharge claim fails as a matter of law.

We affirm the grant of summary judgment in favor of LHSFNA.

*So ordered.*